Okay, Mr. Ramirez. May it please the Court, my name is Joey Mongeres, I represent Mr. Sorlazzano. The first step back, section 403 applies to Mr. Sorlazzano. The district court erred when it failed to recognize this court's directive vacating Mr. Sorlazzano's initial sentence. As a result, Mr. Sorlazzano was subjected to a mandatory 10 and 25 year sentence. But it vacated only counts 3 and 5, right? The way I, the reading of the language in Sorlazzano 1, the direct reading in the appeal is vacated. Along with the direct, the context of it is to counts 3 and 5, but vacated. And that goes, and I can get to this now or later on if the court wants me to go into the unbundling of why the mandate rule doesn't apply. But here I believe because the district court thought it was bound by the mandate rule, it prevented him from considering the first step back. There's intervening law that this court did not take into consideration in Sorlazzano 1. It hasn't taken this into consideration that I can find in any case other than Gomez. However, Gomez, as this court's well aware, was a different posture than where Mr. Sorlazzano is now or at the re-sentencing or when Mr. Sorlazzano was in on direct appeal. In the Gomez appeal, his acts, I believe he was sentenced prior to the first step back and then he was on direct appeal and the first step back came along. That's a different posture. Here, Mr. Sorlazzano was sentenced, yes, initially prior to the first step back. Did he have a sentence as of December 21, 2018? He did have a sentence of 2018. That is, there's no denying that fact. That's why there's a re-sentencing. And I think why you're asking that, and I don't want to assume, is the language in 403 is sentence imposed. Here, yes, there was an initial sentence imposed. However, because we were down to re-sentencing, and as courts in bond, Supreme Court in bond, Pepper, other circuit courts in Urarta, Bethia, sister courts have recognized, it wipes the slate clean. So you're asking us to examine what it means to have a sentence imposed as of that date? I think the way the government reads this and the way I read it is imposed is, for this purposes here, would mean, and what the sister courts have recognized, would mean on a re-sentencing. Because yes, it was imposed here. It was re-sentenced, vacated back, and judged in the district court. So it's imposed and then unimposed on appeal and then imposed again on remand. Is that what your argument is? Yes, sir. And that's backed by, yes, Judge, excuse me, Your Honor. That's backed by bond, backed by Pepper, when it wipes the slate clean. That's not what I just want to believe, but that is backed by Supreme Court and the Fifth Circuit and other sister circuits. And Judge, and the district court here did impose, while it was, while he did not believe, while he believed he was subjected by the mandate rule, he still imposed the sentence of the 924 C's of counts three and six. I'm, excuse me, four and six. That was still imposed in the judgment in 2020, January of 2022. So he did impose another sentence. And based upon that, and again, back to why the intervening law, why the court refused to listen to, the district court refused to listen to arguments on whether or not he was subjected to the mandate rule. He didn't listen, he refused to listen to, I guess, or I guess he thought he was bound by the mandate and didn't. What is the best case that supports your interpretation of the mandate? Teal would be the, I guess, the golden standard of how the man, and gives the, shows that it's discretionary, and then has exceptions to the mandate. We believe we fall in the problems two and three, two specifically the intervening law, why the court can't concede. The first act clearly Congress's intent was clearly to depart down from the draconian sentences of what we have in Cecilia Lozano, that's 10 years and 25 years. After the first act, clearly it's 10 and 10. And so that's what Congress's intent was in intervening law. The district court and the government then and now, I believe, is saying the intervening law does not apply. Because while this court heard Solizano won, the first act was in place. So then it doesn't, but he was not in the posture he is now. He was on direct appeal. And we understand in Gomez and then Solizano won while on direct appeal. Yes, the first act would apply. And Congress didn't intend it to apply because then everybody would just appeal and try to use that in, try to, you know, just, I guess, backdoor that in, in order to get the first act back to apply. But as soon as this court vacated it back to the district court, then we are in intervening law where this court did not take into consideration, did not take 403 into consideration. So that's the intervening law and the golden standard. Now, in the initial brief, we did not brief the manifest injustice in our reply brief to the government. We did say it fell under prompt three, and we do recognize that. If this court, there's another kind of, because counts, all these counts are intertwined. We get to the unbundling and the sentencing package. So we have mandate rule one. I don't believe it applied on appeal and intervening law. Then we go down to the second step. You know, when you take out, even though three and five were sent back, one was tied to three and five. Count one here was ties to counts three and five because of the sentencing package. And the district court recognized at least that. And so then you start to thread, unthread. And here, I believe the government's argument, the district court was the 924Cs, which are counts four and six here, were not intertwined with counts one, three, and five. However, this all, if you read the record in Mr. Sorozano's case, this all stemmed from one incident back, I believe in 2014 or 15. They found the weapons and the drugs all on the same day. This is the same course of conduct. Mr. Sorozano commits the assault on police officers. They get a search warrant. They go back to the house. They find drugs in the gun in the house. This is all the same course of conduct. And so count one is intertwined, obviously, with count two, which Mr. Sorozano was found not guilty of. However, count one, Mr. Sorozano, the PSR adds a weapon enhancement. I understand that you can be found not guilty in relevant conduct and still add a weapon enhancement. But but for, and I know this, I wish I had a chart, but for the other counts, which in essence are the assault of the federal officer, they don't come back to finding the drugs and the guns in count one and two. And again, he was found not guilty of count two. So in order for the weapon enhancement to apply in count one, the two-level weapon enhancement, you have to use at least the same course of conduct in counts three through six, because that those are where the weapons were found with the drugs. The PSR is very telling in here. It says the PSR specifically points to one weapon and then other weapons found on that same day, meaning they're using the counts from weapons from counts three through six. Thus, it is intertwined. And so because of that, the sentencing package has to be unbundled. Mr. Sorellozano is entitled to a full re-sentencing. So not only do I, not only does the mandate rule not apply, then Mr. Sorellozano is entitled to a full re-sentencing because of the unbundling. And as a result, the First Step Act should apply to Mr. Sorellozano. And his sentence, as a result, should be 10. The mandatory minimums would be 10 and 10, which is a 15-year difference here. Lastly, the district court erred when it did not consider, again, the First Step Act as intervening law with regards to his sentence in 3553. Which of the 3553A factors do you think the district court ignored or did not take into consideration? Yes, sir. Specifically, Section 403. And while that's not a 3553A factor, in conception, Justice Sotomayor said, held that the First Step Act allows district courts to consider intervening changes of law or fact and exercising their discretion to reduce a sentence pursuant to the First Step Act. I specifically, we made, the record is very clear that I asked for that and the district court consistently said I refuse to take into account the First Step Act. I objected in the very beginning. I understand the government believes it's plain error because I did not object at the end. However, as I put in the reply brief and it's in the record, I objected in the very beginning saying I object and I can object at the end if you want to procedural error, but I put the court on notice not only in the very beginning, but throughout the entire sentencing of what I was asking for. And there was a back and forth exchange between myself, the district court, and the government. The government argued at re-sentencing. Mr. Mungares is trying to say you should take into account the 3553A factors and redeem the First Step Act and we don't agree with that. And the district court said, yes, I agree with you, government. I think what is most telling is, is at the very end, and this is in the record 1370 to 1371, when he imposes the sentence, he says the decision is not based on the First Step Act. It is based on the 3553A factors. That goes, and I understand the district court, we did not have conception at the time of this, but in light of conception, in light of what we argued, in light of the district court's refusal by saying this decision is not based on the First Step Act, I don't believe the district court thought it could or understood that it could reduce. Again, the district court did not have conception because it was not there, but did not believe he could take that into account. That clearly, he did, and I will say that the district court did take into account the long mandatory minimum sentences and he did take into account what conception did say, his rehabilitative efforts into and imposing on counts one, three, and five, a 60-month sentence. He did take that into account, however, refused and did not, and specifically said, would not take into account the First Step Act. Whether, even if it's on plain air, Mr. Suarezano's, and I don't believe it is, even if it is, his substantive rights were affected. We're not talking about two levels on an objection. We're not talking about four levels. We're talking about 15 years here. That is not insignificant, and so I think it's very clear that Mr. Suarezano's substantial rights, again, I'm not conceding it's under plain air, but even if it was, his substantial rights were clearly affected and the court did not believe it could, based upon its language and throughout the entire record, that it could depart or take into consideration and vary based upon Section 403, the First Step Act, and so I believe the court erred in that. Brevity is not my strong suit, but it looks like I have some time, so unless the court has questions, I will. You've saved time for a moment. Thank you, Magistrate. Thank you, Your Honor. Ms. Hayworth? May it please the Court, Gail Hayworth on behalf of the United States. Turning first to the mandate issue, the District Court did not err in construing this Court's mandate as precluding its reconsideration of the Count 6 sentence. The mandate rule prohibits a District Court honoree man from reexamining an issue of law or fact that was previously decided on appeal and not resubmitted to the District Court, and this prohibition covers issues both decided expressly and by necessary implication. Here, this Court decided in Suarezano 1 that the First Step Act's amended penalties did not apply to Suarezano because his Section 924C sentence was imposed before the Act's enactment, and it decided by necessarily implication that the amended penalties would not apply to him on remand because it affirmed his Count 6 sentence. As this Court held in Clark, under the mandate rule, a District Court is not authorized to entertain challenges to a sentence that this Court affirms on appeal. Therefore, because this Court affirmed the Count 6 sentence, the mandate rule prohibited the District Court from reconsidering that sentence on remand. Now, to try to get within the mandate rule, Suarezano argues that the Court vacated his entire sentence, but this Court's opinion in Suarezano 1 does not support that argument. The Court vacated only the Count 3 and Count 5 sentences because the Court erroneously applied the official victim enhancement, and it provided the correct guidelines that would apply on remand without that enhancement, thereby recognizing that Count 1 would be affected because it was notably affirmed the Count 6 sentence, and there is nothing in the record, unlike Count 1, to indicate that the Count 6 sentence was dependent on the vacated sentences or bundled with them. To the contrary, the record indicates that the Count 6 sentence was based on independent criteria, a separate statutory mandatory minimum, and a separately calculated guideline range. Moreover, this is not a situation where, based on this Court's ruling on Counts 3 and 5, that there is any possibility that the Court would have exercised its discretion differently on Count 6, because regardless of whatever happened to the vacated counts on remand, the Court had no discretion to go any lower on Count 6, and it had no need to go any higher because it had ample discretion on Counts 3 and 5 to adjust for the changed circumstances of the lower guideline ranges on those counts. Now, to get around the mandate rule, Suarezano argues that an exception applies, specifically the intervening law exception, and he suggests that the First Step Act, or the Ninth Circuit's opinion in Merrill, or the government's change in position, could qualify as an exception to the mandate rule, but none of these qualify. First of all, the First Step Act was in existence at the time of this Court's mandate, and therefore it's not an intervening change in the law that can excuse the district court from following this Court's instructions, and that principles in Pinheiro and McCrennan. And the Ninth Circuit's decision in Merrill obviously is not controlling authority for this Circuit, and moreover, it didn't change the law because it's not inconsistent with this Court's mandate. Merrill did not hold that a defendant whose Section 924C sentence is affirmed on appeal is thereby entitled to the amended penalties on remand. Similarly, this government's change in position regarding the proper interpretation of Section 403B is not controlling authority for this Court. This Court is free to disagree with government's interpretation of that section. Moreover, our change in interpretation does not affect Salazarno, because under our prior interpretation, the amended penalties did not apply to him, and under our current interpretation of Section 403, they still did not apply to him. Now, Salazarno suggests for the first time in his reply brief that another exception to the mandate rule applies, specifically that Salazarno 1 was erroneously decided, such that it would be a manifest injustice if this Court were to continue to follow it. But he waived that issue by not raising it in his initial brief, and moreover, he fails to show that Salazarno 1 was erroneously decided, because it is consistent with this Court's precedent in Gomez, as well as with the precedent in every other Circuit, which has held that the amended penalties of the First Act do not apply to a defendant whose Section 924C sentence was imposed before the Act, and whose sentence has remained valid thereafter. But even if the mandate rule did not preclude the District Court from reconsidering the Count 6 sentence, the District Court did not err in not applying the amended penalties to Salazarno on remand. Under the broadest reading of Section 403B, which the government has now adopted, the First of Acts amended penalties do not apply to a defendant who is sentenced on his Section 924C counts before the Act, and whose sentence was not thereafter vacated. Salazarno's Section 924C sentences were imposed pre-Act, in November 2017, more than a year before the Act's enactment, and his Section 924C sentences were affirmed on appeal, not vacated. So therefore, under the broadest reading of Section 403, the amended penalties would not apply to him. And this accords with the Third Circuit's decision in Hodge, and the Third Circuit has adopted the broadest reading of Section 403, as the government has also adopted, and even then, it said that the Salazarno, whose Section 924C sentences were affirmed on appeal, even though he was later resentenced after the Act's enactment date on other counts. So just as the amended penalties did not apply to the defendant in Hodge, they did not apply to Salazarno. Now turning to the final issue, the third issue, about whether or not the District Court plainly erred when it purportedly failed to consider its discretion to consider the change of law, the First of Acts non-retroactive amended penalties under the 3553A factors. This issue is reviewed for plain error because he never put the Court on notice of the argument he is now raising on appeal. He never argued that the District Court lacked authority to consider the change of law under the Section 3538 factors. Now he points to an objection he made to the Court's mandate ruling, but that was a separate issue. That was whether or not the Court could consider or reconsider the sentences on the 924C not whether or not the Court had the discretion to consider the First Step Act when exercising its discretion on counts 1, 3, and 5. He also suggests that he preserved the issue just by making the argument, but that exchange with the Court shows that he made the argument to consider the current state of the law under the 3553A factors with regards to count 1, 3, and 5. The Court considered it and asked, what sentence do you think would appropriately account for all the sentencing factors that you want the Court to take account? The Court, the defense asked for a sentence of one month, a 96 variance below the properly calculated guidelines, and the Court disagreed. It didn't agree with the extent of that variance. So that exchange shows that the Court considered the argument. It didn't think that it didn't have the discretion to consider it. It considered it, it just didn't give the weight that the defense wanted it to. And that fails, that shows that he can't show error under any standard growth review. But moreover, he can't show an effect on his substantial rights because he can't show that had the Court considered the current state of the law, the First Step Act's amendments under the 3553A factors, it would have imposed a lesser sentence. And this is because the First Step Act is simply not that persuasive of a factor. Even setting aside the fact that Congress did not want those amended penalties to apply to Solorzano, at best, the First Step Act is an argument about how Congress views the seriousness of the offense in the abstract. But the District Court here had much more than an offense in the abstract. It had the particular facts of Solorzano's offense, in which he indiscriminately fired into a neighborhood and did not stop shooting until he ran out of bullets. Looking at the particular facts of Solorzano's offense, it is extremely unlikely that the District Court would have viewed his offense any less seriously than it did, based on an abstract argument about the First Step Act. Moreover, to whatever extent the Court found that the mandatory minimums were excessive or overstated the seriousness of the defendant's offense, it accounted for that by varying downward on counts one, three, and five, so as to craft a total sentence that was no greater than necessary to achieve the sentencing's factors. Accordingly, Solorzano can't show that he would have received a lesser sentence had the Court considered the non-retroactive amendments under the 3553A factors. And unless the Court has any further questions, we would ask it to affirm. All right, thank you, Ms. Maywood. Mr. Bargaras? I'd like to address the government's first argument with regards to the mandate rule. We agree that in Solorzano 1, and we agree with the case law, that the mandate rule, one, there's an exception that does not allow courts to re-examine issues that were examined expressly or implicitly. Here, the First Step Act in Solorzano 1 was neither. It was not expressly addressed nor implicitly addressed. And this Court has not done either, and that I can find in any other case, because Mr. Solorzano, his posture at that time was when he was at just the appellate stage, not at the re-sentencing. So this Court did not expressly or implicitly rule on it, nor did the District Court, because it could not, at the initial sentence, because Mr. Solorzano was not in the position he is in at the re-sentencing or even now. Therefore, the intervening law exception does apply, because his Court has not taken that into consideration. And specifically, I believe the government points to Gomez, and the District Court did as well, Gomez, however, this Court specifically did decline to determine whether it makes a difference that a sentence was imposed on the date of the original sentence hearing or the date of the re-sentencing hearing for purposes of the First Step Act. Therefore, this Court has not considered that, and in direct relation with Mr. Solorzano, his posture is completely different, and therefore, again, the intervening law should apply with regard, or the exception, excuse me. Second, I believe, again, the government talks about a plenary review with regards to Mr. Solorzano's sentence. I want to read this, not only, again, that I object, and I want to let an invitation to speak is not something that the Court necessarily considers. This Court did not consider the First Step Act with regards to 3553A factors. The government specifically, at re-sentencing, said Mr. Montgomery Harris is asking this Court to consider the First Step Act as part of the 3553A factors. We believe that there is no legal mechanism for the Court to do that. The First Step Act does not apply. It does not get any clearer than that, that the Court did not take into consideration the First Step Act. Now, I understand, again, we're not conceding a plain error, but even if it is a plain error, it's not specifically how this government puts in the abstract. It's what we look at, what they point to in the abstract. Even if it is, all things being equal, 10 and 10 is where Mr. Solorzano would be in the abstract if the First Step Act applied. That is something the Court did not take into consideration. Again, it's not insignificant. That is a 15-year difference. We're not talking about a four-level or a two-level departure. We are talking, or variance, we are talking about where Mr. Solorzano would be if the First Step Act applied, if he was charged with this offense in 2019. Even as the government puts it in the abstract, the same offense that they talked about, he would be at 10 and 10, not 10 and 25. And that, again, is not insignificant. The Court did not consider those factors. It did, in all fairness to the District Court, it did take into account his rehabilitative efforts, but it did not take into account where he would have been, even as the government puts it in the abstract, where he would have been if the First Step Act were to apply to him. Even if the District Court says we're not going to resubmit him to the First Step Act, but yes, I'll consider now if, A, if he was charged today, he would be at 10 and 10. That is, again, something the District Court did not take into consideration and, of course, substantial rights were affected. If there are no more questions. Thank you, Mr. Coonford. The case is under submission and we noticed that you were caught up on it. We appreciate it.